STATE ex rel. Luanne S. UNNERSTALL, Protectee, By Anna Leighton, her Conservator, Relator,

v.

The Honorable John B. BERKEMEYER, Respondent.

No. SC 89982.

Supreme Court of Missouri, En Banc.

Nov. 17, 2009.

Rehearing Denied Dec. 22, 2009.

Clifford S. Brown, Emily J. Kembell, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, MO, for relator.

Richard A. Wunderlich, Sarah Mullen–Dominguez, Lewis, Rice & Fingersh, L.C., St. Louis, MO, Kurt A. Voss, Washington, MO, for respondent.

MICHAEL A. WOLFF, Judge.

### Introduction

Where there's a will, there's a way, as the saying goes. In probate law, however, unless the will is as prescribed by statute, there is no will—no way.

The question here is whether the decedent's purported will can be admitted to probate, under the applicable statute, when it was not presented to the probate division within one year of decedent's death, as the statute requires.

When a person dies, Missouri's statutes specify how the person's assets are to be distributed unless there is a valid will that is admitted timely to probate. Hence, the ability of a decedent to control the disposition of property after death is subject to the formalities the law requires of a will and, after death, the time limits prescribed for the heirs or other interested persons to present the will to the probate division.

In this case, Harold Unnerstall established a trust and purportedly executed a will during his life. On the first anniversary of Mr. Unnerstall's death, his widow, Luanne S. Unnerstall, filed a petition in the probate division of the Franklin County circuit court to administer his estate. Later, the purported will was presented to the probate division. Mrs. Unnerstall asserts that her husband's assets should be subject to probate as though he died without a will because the will was not presented to the probate division within one year as required by law.

Notwithstanding Mrs. Unnerstall's objection, the respondent judge admitted her husband's purported will to probate and granted letters testamentary to Gary Unnerstall, the decedent's nephew, whom the will names as executor.

As relator, Mrs. Unnerstall petitioned this Court for a writ of mandamus asking that this Court require the respondent judge to vacate the orders admitting her husband's purported will to probate, to grant letters testamentary to her, and to enter an order declaring that her husband died intestate. This Court, which has jurisdiction under article V, section 4 of the Missouri Constitution, issued a preliminary writ of mandamus. Because the decedent's will was not presented timely, the writ is made permanent.

### The Language of Writs of Prohibition and Mandamus

■ This Court has used different language based on whether it is issuing a writ of prohibition or mandamus. A writ in prohibition typically has been issued as a preliminary writ and then "made absolute" or quashed. In contrast, a writ of mandamus typically has been issued as an "alternative writ" and then made "peremptory" or quashed.

The distinction between prohibition[1]

---

1. The remedy by writ of prohibition is of ancient origin in our system of jurisprudence. It is an original remedial writ, as old as the common law itself. . . .

The jurisdiction by prohibition is primarily supervisory, having for its object the confinement of courts of peculiar, limited or inferior jurisdiction within their bounds; to prevent them from encroaching upon the jurisdiction of other tribunals; to restrain them from exercising jurisdiction where they do not properly possess jurisdiction at all, or else to prevent them from exceeding their limits in matters of which they have cognizance.

FORREST G. FERRIS & FORREST G. FERRIS, JR., EXTRAORDINARY LEGAL REMEDIES 414–15 (1926) (footnotes omitted).

and mandamus [2] is often elusive and sometimes only serves to create confusion for parties. Petitions often seek writs of prohibition and (or "and/or") mandamus. This Court or the court of appeals then chooses which one it thinks applies. *See e.g., State ex rel. Pidgeons v. Ryan,* 759 S.W.2d 837, 837 (Mo. banc 1988) ("Relator filed a petition for writ of prohibition and mandamus, and we issued a preliminary rule in prohibition."). In allowing the petitioned-for writ of mandamus to be issued where a writ of prohibition seemed the better writ to issue, the court of appeals stated that "[t]he distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent." *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 148 (Mo.App.1984). The court stated that to deny a writ of mandamus in the case would be to "engage in fine, anachronistic distinctions of nomenclature" and "revert to the hyper-technical niceties of Common Law Pleading where the title of pleading was of more importance than its content." *Id.*

There has been some attempt to remedy this confusion. *See, e.g., State ex rel. Office of Pub. Counsel v. Pub. Serv. Comm'n of the State of Missouri,* 236 S.W.3d 632, 635 (Mo. banc 2007) ("This Court issued its alternative (i.e., preliminary) writ of mandamus ... which the Court now makes peremptory (i.e., final, absolute)."). It

would seem to make no difference if the same language were used for either writ.

■ To facilitate greater clarity, this Court from this point forward will change its terminology in mandamus and prohibition cases by abandoning the words and phrases "alternative writ," "absolute" and "peremptory." All initially issued writs in such cases shall be preliminary writs of mandamus or prohibition, as the case may be, that, upon final determination, shall be made quashed or made permanent.[3]

As applied in the current case, the Court notes that it issued a preliminary writ of mandamus, which was labeled as an alternative writ of mandamus. With the merits of the case decided, the Court makes the preliminary writ permanent, which directs the respondent to take the mandated action.

### Facts and Procedural History

Harold H. Unnerstall died in March 2006 in Franklin County. Luanne S. Unnerstall, the relator, is his surviving spouse. Shortly after her husband's death, Mrs. Unnerstall was adjudged to be an incapacitated and disabled person, and the court appointed Anna Leighton as conservator. Ms. Leighton brings this proceeding on Mrs. Unnerstall's behalf.

Before his death, Mr. Unnerstall established the "Indenture of Trust of Harold H. Unnerstall," naming his nephew, Gary Unnerstall, as trustee of the trust estate.

---

**2.** Mandamus is a writ of very ancient and obscure origin. Its original purpose was to prevent disorder from a failure of justice and defect of police, and grew out of the necessity of compelling inferior courts to exercise judicial and ministerial powers invested in them, by not only restraining their excesses, but also in preventing their negligence and restraining their denial of justice. It never issued, however, to restrain judicial discretion except where greatly abused.

*Id.* at 218–19 (footnotes omitted).

**3.** Rule 84.24(1) also notes that any time this Court or the court of appeals chooses to issue a permanent ("peremptory") writ of mandamus or prohibition, "the court shall issue an opinion setting out its reasons for issuing the writ." A preliminary order in mandamus or prohibition may be quashed by order with or without an opinion setting forth the court's reasons.

Mr. Unnerstall also purportedly executed a last will and testament and a codicil that provided, that on his death, all of his tangible personal property and all the rest, residue and remainder of his estate be added to the principal of the trust estate and administered in accordance with the trust. Gary Unnerstall was named as executor in the will.

Gary Unnerstall offered Mrs. Unnerstall $92,306 (10% of the trust estate) in October 2006—about seven months after Mr. Unnerstall's death—as the amount due to Mrs. Unnerstall pursuant to Mr. Unnerstall's trust and purported will. Mrs. Unnerstall did not accept this payment.

When Mrs. Unnerstall filed a "Petition to Require Administration" of her husband's estate in the probate division, one year after his death, she alleged that he had died intestate. The probate division scheduled a hearing on the petition. Gary Unnerstall filed the purported will about a month before the hearing, which was held in May 2007.[4] On the day of the hearing, Gary Unnerstall filed an affidavit stating he had not opened a probate estate on behalf of Mr. Unnerstall because he believed that all of the assets Mr. Unnerstall owned at the time of his death were held in a revocable living trust and not subject to probate administration. No decision was made on the petition for administration, and the parties were given 15 days to submit memoranda of law.

The probate division judge later recused himself without making a decision. The new judge, the respondent here, sustained the "Petition to Require Administration." The respondent judge told Mrs. Unnerstall to file the application to probate the will and to pay fees for the publication. In a letter to the court, Mrs. Unnerstall's counsel asked that the will not be admitted because it had been filed with the probate division more than a year after Mr. Unnerstall's death. In November 2008, however, the respondent judge entered an order and judgment admitting the purported will of Mr. Unnerstall to probate and an order and judgment granting letters testamentary to Gary Unnerstall as personal representative. The next month, the probate division clerk filed an affidavit verifying publication of a "Notice of Letters Granted."

## Analysis[5]

Mrs. Unnerstall starts her argument in the wrong place by asserting that the respondent acted "in excess of his jurisdiction." She argues that the probate division did not have "subject matter jurisdiction" to admit or reject the purported will to probate, under the statute, because more than one year had passed since Mr. Unnerstall's death. Under article V of the Missouri Constitution, circuit courts have plenary subject matter jurisdiction, which includes jurisdiction over probate matters. Accordingly, it is incorrect to cast statutory arguments as matters of subject matter

---

4. The will was delivered to the court but was not "presented"—as the statute uses that word—until September 2008. For a testator's will to be "presented," the will must be delivered to the probate division of the circuit court along with either an affidavit requesting probate, a petition seeking probate, or a copy of an order admitting the will to probate in another jurisdiction. Section 473.050.2, RSMo 2000.

5. The standard of review for a writ of mandamus "is abuse of discretion, and an abuse of discretion occurs where the circuit court fails to follow applicable statutes." *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 631 (Mo. banc 2007). "Where, as here, issuance of the writ depends on the interpretation of a statute, this Court reviews the statute's meaning *de novo*." *State ex rel. White Family P'ship v. Roldan*, 271 S.W.3d 569, 572 (Mo. banc 2008).

jurisdiction. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009). There is no question of jurisdiction in this case; the circuit court, which in this case has a probate division, has subject matter jurisdiction to admit or reject a will to probate. Whether, under chapter 473, especially section 473.050,[6] the probate division was correct in admitting the purported will of Mr. Unnerstall, however, is a different matter and is the question this Court addresses in this opinion.

Mrs. Unnerstall's petition for administration was filed under section 473.020 on the first anniversary of her husband's death. The statute allows such a petition to be filed within one year after a decedent's death by any "interested person" if "no application for letters testamentary or of administration is filed ... within twenty days" of a decedent's death. The petition then is to be set for a hearing to determine "who should be directed to apply for letters testamentary or of administration...." Section 473.020.3. Gary Unnerstall argues that by filing her petition for administration, Mrs. Unnerstall opened the estate so that any will of Mr. Unnerstall could be presented within six months of notice of letters being issued under section 473.050. Mrs. Unnerstall argues that section 473.050 prevents presentment of any will after the passage of one year following a decedent's death regardless of whether notice of letters were issued after a petition for administration is filed.

Section 473.050.5 provides that if a will is "not presented for probate during the time limitations provided in subsection 3, [it] is forever barred from admission to probate in [Missouri]." Section 473.050.3 provides the following time limitations for when a will shall be admitted:

(1) In cases where notice has previously been given [through publication] of the granting of letters on the estate of such testator, within six months after the date of the first publication of the notice of granting of letters, or within thirty days after [a will-contest] action ..., whichever later occurs;

(2) In cases where notice has not previously been given [through publication] of the granting of letters on the estate of testator, within one year after the date of death of the testator;

(3) In cases involving a will admitted to probate in [another United States jurisdiction besides the state of Missouri], at any time during the course of administration of the decedent's domiciliary estate in such other [jurisdiction].

Section 473.050.4 provides that so long as a will is presented within these time limits, administration may be granted on the will at any time after presentation.

All parties here agree that the purported will was not "presented" within the meaning of the statute until the application to probate the will was filed in September 2008, more than two years after Mr. Unnerstall's death. Section 473.050.2. The parties disagree, however, as to how the statutory time limitations of section 473.050 apply and whether the purported will now can be admitted to probate. Mrs. Unnerstall argues that if the will is not presented within one year of the decedent's death and no notice has been issued during that time, the will is absolutely barred under section 473.050.3(2). Gary Unnerstall argues, however, that so long as the estate is opened within one year of the decedent's death, a will can be presented at any time before the expiration of six months following publication of notice under 473.050.3(1).

---

6. Unless otherwise noted, all statutory references are to RSMo 2000.

Despite the General Assembly's salutary efforts to make the probate statutes simpler, it is not an easy task to interpret this statutory scheme correctly. The meaning of the statute is elusive, so the Court looks for guidance in cases about statutory construction. A few oft-stated principles will help: " 'The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.' " *State ex rel. Nixon v. QuikTrip Corp.,* 133 S.W.3d 33, 37 (Mo. banc 2004) (citing *Wolff Shoe Co. v. Dir. of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988)). "To discern legislative intent, 'the Court may review the earlier versions of the law, or examine the whole act to discern its evident purpose, or consider the problem that the statute was enacted to remedy.' " *United Pharmacal Co. of Missouri, Inc. v. Missouri Bd. of Pharmacy,* 208 S.W.3d 907, 911–12 (Mo. banc 2006) (citing *In re M.D.R.,* 124 S.W.3d 469, 472 (Mo. banc 2004)). "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert verbiage or superfluous language in a statute." *Hyde Park Hous. P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993).

Prior to the enactment of the current time limits in section 473.050, the relevant time limits for presentment of a will were set out in both sections 473.050 and 473.070, RSMo 1994. Section 473.050, RSMo 1994, which closely mirrors current section 473.050.3(1), provided that a will must be presented within "six months of first publication of the notice of granting letters testamentary or of administration or within thirty days from the commencement of a [will-contest] action, ... whichever is later...." Section 473.070, RSMo 1994, stated that "[i]n addition to the limitations of time provided in section 473.050, no written will shall be admitted to probate and no administration granted unless application is made to the court of the same within one year from the death of the decedent."

Prior to the 1996 changes, it was settled law that no will could be admitted and no administration of the will could occur unless application was made to do so within one year of the decedent's death. *See, e.g., Estate of Rose,* 950 S.W.2d 633, 634 (Mo. App.1997) (finding a one-year statute of limitations for presentment of a will applied under 473.070, RSMo 1994, "even with harsh results"). With the enactment of sections 473.050.3 and 473.050.4, however, the legislature changed this rule. Section 473.050.4 now states that so long as a will is admitted within subsection 3's time limits, the will "may be exhibited to be received and administration granted on such will *at any time* after presentment." (Emphasis added). Gary Unnerstall argues that the legislature changed both the time limitation for administration and for presentment.

The legislature did not make such a drastic change. A statute of limitations for presentment has existed since 1955.[7] If the legislature had intended to do away with this limitation whenever notice of letters issued—no matter how many months or years had passed since a testator's death—it would have been clearer. Instead, keeping the one-year language of section 473.050.3(2) indicates a legislative intent to keep a one-year time limitation

7. In 1955, the statute of limitations was five years from the date of the testator's death. The time was reduced to three years in 1971 and then to one year in 1989. *See* John A. Borron Jr., *Probate Law and Practice,* 5 Mo. Prac. Sec. 202 (3d ed.2009).

for the presentment of a will.[8] Gary Unnerstall argues that if the legislature had intended the one-year time limitation to continue to apply as it had before 1996, it would have done so by keeping the pre–1996 language, which stated that *"[i]n addition to the limitations of time* provided in [section] 473.050, no written will shall be admitted ... unless application is made to the court for the same within one year from the death of the decedent." Sec. 473.070, RSMo 1994 (emphasis added). It is just as likely, however, that the "in addition ..." clause was removed because the legislature believed it no longer was necessary once all of the time limits were placed in a single statutory section. Further, the introductory phrase "[i]f notice has not *previously* been given" suggests that one must determine if notice is given before one year has passed since the decedent's death. Sec. 473.050.3(2) (emphasis added). If this were not the intent of the legislature, the word "previously" would not have been necessary.

 "[T]here is no natural or inherent right to dispose of property by will; ... the state has the power to prohibit such disposition entirely, and ... has the lesser power to prescribe the time for probating a will." *State ex rel. Bier v. Bigger*, 352 Mo. 502, 178 S.W.2d 347, 350 (1944) (disallowing a will not presented for probate within the statute of limitations even though the will was concealed fraudulently). In this case, the legislature has chosen to allow one year from the time of a decedent's death for the presentment of a will if notice has not been given before the end of one year.[9] Here, publication of notice of letters being issued did not occur within one year of Mr. Unnerstall's death. Yet the will was not presented, or even delivered, until more than a year had passed from the date of Mr. Unnerstall's death. Gary Unnerstall, as executor in the will, argues he did not present the will earlier because he did not know of any assets to be probated. But this is why the legislature chose to amend the statute in 1996: to allow for administration to occur at any time after the testator's death if assets were found later.[10]

The legislature, however, did not choose to change the one-year will presentment time limitation. The purported will was presented more than one year after Mr. Unnerstall had died and, therefore, is time-barred by section 473.050.[11] Mr. Unnerstall's property will be distributed in accordance with the law as though he died without a will.

## Conclusion

Because section 473.050 prevents a will from being presented more than one year

---

8. *See* Missouri Bar Probate & Trust Comm. Comment to HCS SS SCS SB 494 (1996) ("This section ... clarifies that a will may be presented for probate within the one year period but administration commenced thereon at a later date.").

9. *See* Borron, *Probate Law and Practice* ("If ... a decedent dies testate, but the will is not presented for probate within the one year period, ... title to the testator's real property will pass by intestate descent....").

10. *See* Bruce A. Tannahill, *Probate Code Changes Continue Trend Toward Simplicity*, 53 J. Mo. B. 273, 273–74 (1997) (stating that although the legislature's 1996 changes had removed the one year time limit for administration of a will, a decedent's will "should promptly be probated, even if no probate administration is contemplated [to] preserve[ ] the right to commence administration if later assets subject to probate are later discovered").

11. The Court expresses no view as to how the assets of Mr. Unnerstall should be distributed. It appears that Mr. Unnerstall and his wife entered into a prenuptial agreement. Whether that agreement is valid and applicable are matters for the circuit court to decide in the first instance.

after the death of a decedent if notice of letters has not been published already, the respondent judge should not have admitted Mr. Unnerstall's will to probate, nor should letters testamentary have been issued in accordance with the will. The preliminary writ of mandamus is made permanent.

All concur.